*** FOR PUBLICATION IN W EST'S HAW AI#I REPORTS AND PACIFIC REPORTER ***

 Electronically Filed
 Supreme Court
 SCPW-11-0000741
 06-JAN-2012
 03:24 PM

 IN THE SUPREME COURT OF THE STATE OF HAWAI#I

 ---o0o---

 NO. SCPW-11-0000732

 MALAMA SOLOMON, STATE SENATOR, 1ST SENATORIAL DISTRICT;
 LOUIS HAO; PATRICIA A. COOK; and STEVEN G. PAVAO,
 Petitioners,

 vs.

 NEIL ABERCROMBIE, GOVERNOR, STATE OF HAWAI#I;
 SCOTT NAGO, CHIEF ELECTION OFFICER, STATE OF HAWAI#I;
 STATE OF HAWAI#I 2011 REAPPORTIONMENT COMMISSION;
 VICTORIA MARKS; LORRIE LEE STONE; ANTHONY TAKITANI;
 CALVERT CHIPCHASE IV; ELIZABETH MOORE; CLARICE Y. HASHIMOTO;
 HAROLD S. MASUMOTO; DYLAN NONAKA; and TERRY E. THOMASON,
 Respondents.
-----------------------------------------------------------------

 NO. SCPW-11-0000741

 MICHAEL J. MATSUKAWA, Petitioner,

 vs.

 STATE OF HAWAI#I 2011 REAPPORTIONMENT COMMISSION; and
 SCOTT NAGO, CHIEF ELECTION OFFICER, STATE OF HAWAI#I,
 Respondents.

 NOS. SCPW-11-0000732 and SCPW-11-0000741

 ORIGINAL PROCEEDING

 JANUARY 6, 2012

 Recktenwald, C.J., Nakayama, Acoba, Duffy, and McKenna, JJ.
 *** FOR PUBLICATION IN W EST'S HAW AI#I REPORTS AND PACIFIC REPORTER ***

 Per Curiam. In these related original proceedings, the

petitioners petitioned this court pursuant to the Hawai#i

Constitution, article IV, section 10, quoted infra, for: (1) a

judgment invalidating the 2011 Final Reapportionment Plan for the

state legislature adopted and filed on September 26, 2011 by the

State of Hawai#i 2011 Reapportionment Commission; (2) a writ of

mandamus directing the Reapportionment Commission to prepare and

file a new reapportionment plan for the state legislature; and

(3) a writ of mandamus directing the Chief Election Officer to

rescind the publication of the 2011 Final Reapportionment Plan.

 On January 4, 2012, we issued orders granting the

petitions. We concluded that the 2011 Final Reapportionment Plan

is constitutionally invalid because: (1) the Hawai#i

Constitution, article IV, section 4, expressly mandates that only

permanent residents be counted in the population base for the

purpose of reapportionment and (2) the 2011 Final Reapportionment

Plan disregards this constitutional mandate by including non-

permanent residents in the population base that the

Reapportionment Commission used to allocate the members of the

state legislature among the basic island units. We invalidated

the 2011 Final Reapportionment Plan and directed the

Reapportionment Commission to prepare and file a new

reapportionment plan that: (1) allocates the members of the state

legislature among the basic island units by using a permanent

resident population base, and then (2) apportions the members

 2
 *** FOR PUBLICATION IN W EST'S HAW AI#I REPORTS AND PACIFIC REPORTER ***

among the districts therein as provided by article IV, section 6.

We further directed the Chief Election Officer to rescind the

publication of the 2011 Final Reapportionment Plan for the state

legislature.

 I. BACKGROUND

 A.

 The Hawai#i Constitution, article IV (Reapportionment),

requires, every tenth year after 1981, reapportionment for the

state legislature and congressional districts. Reapportionment

is effected by a reapportionment plan filed by a nine-member

reapportionment commission constituted in the reapportionment

year.

 Article IV, as originally enacted in 1978, provided for

reapportionment of the state legislature by requiring allocation

-- among the four basic island units of the 25 senatorial

districts and the 51 house of representative districts -- "on the

basis of the number of voters registered in the last preceding

general election." Though the registered voter basis was upheld

as constitutional by the United States Supreme Court because it

approximated a plan based on a permissible population base,1 the

1991 Reapportionment Commission concluded, after analyzing its

data, that use of the voter registration basis would not result

in a constitutionally permissible apportionment plan. It

 1
 Burns v. Richardson, 384 U.S. 73, 96 (1966)

 3
selected, as an alternative apportionment base, the permanent

resident population, identified as the total population derived

from the 1990 census, less transients. It hired a research firm

to "determine which transients were counted in the census, how

many there were and whether or not they could be located in

specific census blocks." The research firm, upon consultation,

reported to the 1991 Reapportionment Commission that "the

nonresident military is the only large, census-block-identifiable

group of nonresidents included in the census" and that "other

groups, such as nonresident students, are statistically

insignificant and cannot be easily placed in specific census

blocks." The 1991 Reapportionment Commission thereupon decided

to exclude, from the permanent resident population base,

nonresident military personnel and their dependents as

constituting "the vast majority of transients included in the

census counts." It stated, in its final reapportionment plan,

that "exclusion of nonresident military from the census data will

come as close as possible to the desired permanent resident base

for legislative reapportionment" because: (1) nonresident

military then constituted about 114,000 or 14% of Hawaii's

population; (2) most military personnel considered Hawai#i a

temporary home and only 3% opted to become Hawai#i citizens; and

(3) 98% of military dependents claimed the same residency as the

military member of the family.

 4
 The 1991 Reapportionment Commission's final

reapportionment plan was the basis, in the 1992 legislative

session, for House Bill 2327 to amend article IV of the Hawai#i

Constitution to change the state legislature apportionment base

from registered voters to permanent resident population "based on

the 1991 Reapportionment Commission's Final Reapportionment Plan"

and "the reasons set forth in [the] Plan." House Bill 2327 was

enacted by the 1992 legislature and article IV of the Hawai#i

Constitution was amended by Hawai#i voters in 1992 to its present

form.

 ARTICLE IV
 REAPPORTIONMENT
 . . . .
 APPORTIONMENT AMONG BASIC ISLAND UNITS

 Section 4. The [reapportionment]
 commission shall allocate the total number of
 members of each house of the state legislature
 being reapportioned among the four basic island
 units, namely: (1) the island of Hawaii, (2) the
 islands of Maui, Lanai, Molokai and Kahoolawe,
 (3) the island of Oahu and all other islands not
 specifically enumerated, and (4) the islands of
 Kauai and Niihau, using the total number of
 permanent residents in each of the basic island
 units and computed by the method known as the
 method of equal proportions; except that no basic
 island unit shall receive less than one member in
 each house.
 . . . .
 APPORTIONMENT WITHIN BASIC ISLAND UNITS

 Section 6. Upon the determination of the
 total number of members of each house of the
 state legislature to which each basic island unit
 is entitled, the commission shall apportion the
 members among the districts therein and shall
 redraw district lines where necessary in such
 manner that for each house the average number of
 permanent residents per member in each district
 is as nearly equal to the average for the basic
 island unit as practicable.

 5
 *** FOR PUBLICATION IN W EST'S HAW AI#I REPORTS AND PACIFIC REPORTER ***

The apportionment provisions of article IV, sections 4 and 6 are

incorporated in the reapportionment statute, HRS Chapter 25,

which provides that the reapportionment commission "shall

reapportion the members of each house of the legislature on the

basis, method, and criteria prescribed by the Constitution of the

United States and article IV of the Hawaii Constitution." HRS §

25-2(a) (2009).

 The reapportionment commission, within 150 days from

the date that its members are certified, "shall file with the

chief election officer a reapportionment plan for the state

legislature . . . which shall become law after publication as

provided by law." Article IV, section 2; HRS § 25-2(a). "Within

fourteen days after the filing of the final reapportionment plan,

the chief election officer shall cause public notice to be given

of the final legislative reapportionment plan which, upon public

notice, shall become effective as of the date of filing and

govern the election of members of the next five succeeding

legislatures." HRS § 25-2(a). "In the event of a successful

court challenge of a reapportionment plan, the reapportionment

commission shall continue in operation and may assist the court

in formulating a new reapportionment plan." HRS § 25-9 (2009).

 B.

 2011 being a reapportionment year, the State of Hawai#i

2011 Reapportionment Commission ("the Commission") was certified

 6
 *** FOR PUBLICATION IN W EST'S HAW AI#I REPORTS AND PACIFIC REPORTER ***

on April 29, 20112 and tasked with adopting and filing a final

reapportionment plan by September 26, 2011.

 The Commission, at its initial organizational

meetings, adopted "Standards and Criteria" that it would follow

for the 2011 reapportionment of the congressional and state

legislative districts. The "Standards and Criteria" for the

state legislative districts stated:

 Standards and criteria that shall be followed:

 The population base used shall be the "permanent
 resident" population of the State of Hawaii. The
 permanent resident population is the total
 population of the State of Hawaii as shown in the
 last U.S. census less the following: non-resident
 students and non-resident military sponsors.

 At meetings on May 11 and 24, 2011, the Commission was

briefed on Hawaii's population growth since the 2001

reapportionment, the history of Hawaii's reapportionment, and the

constitutional and statutory provisions governing

reapportionment. It was provided with data from the 2010 Census

showing a 12% increase in the state's total population consisting

of increases of 24% in Hawai#i County, 21% in Maui County, 15% in

Kauai County, and 9% in Oahu County. It was informed of article

IV, section 4 and 6's permanent resident basis for apportioning

the state legislature and informed -- by counsel to the 2001

 2
 The Commission members are Victoria Marks, Chairperson, Calvert
Chipchase IV, Clarice Hashimoto, Harold Masumoto, Elizabeth Moore,
Dylan Nonaka, Lorrie Lee Stone, Anthony Takitani and Terry Thomason.
Marks was appointed by this court as the ninth member and Chairperson
on April 29, 2011, pursuant to article IV, section 2, after the eight
Commission members were unable to select the ninth member.

 7
 *** FOR PUBLICATION IN W EST'S HAW AI#I REPORTS AND PACIFIC REPORTER ***

Reapportionment Commission -- that the 2001 Commission computed

the permanent residence base by excluding nonresident military

personnel and their dependents, and nonresident college students.

It was informed by Commission staff that data on Hawaii's

nonresident military population had been requested from the

Defense Manpower Data Center (DMDC) through the U.S. Pacific

Command (USPACOM) and that Hawaii's nonresident student

population would be identified by their local addresses and

assigned to specific census blocks. The Commission, at the

conclusion of the May meetings, solicited advice from the

apportionment advisory councils3 as to whether nonresident

military and nonresident students should be excluded from the

permanent resident base.

 The Maui and Kauai advisory councils recommended, at

the Commission's June 9, 2011 meeting, to exclude nonresident

military and nonresident students.4 Commissioner Takitani

thereupon asked Commission staff whether the current

apportionment of the state legislature would change if

apportionment were computed on the total resident population,

 3
 HRS § 25-7 (2009) (apportionment advisory councils) ( "The
apportionment advisory councils for the respective basic island units
shall be constituted at the same time as the reapportionment
commission[.] Each advisory council shall serve in an advisory
capacity to the reapportionment commission as to matters affecting its
basic island unit.").
 4
 The Hawaii advisory council later recommended exclusion only of
nonresident military. The Oahu advisory council's recommendation is
not reflected in the Commission's proceedings.

 8
 *** FOR PUBLICATION IN W EST'S HAW AI#I REPORTS AND PACIFIC REPORTER ***

without exclusion of nonresidents. Commission staff indicated

that there would be no change in apportionment without exclusion

of nonresidents, but that Oahu County's senate seats would be

reduced from 18 to 17 and Hawai#i County's senate seats would be

increased from 3 to 4 with an extraction of nonresidents of over

20,000.

 The Commission, at its June 28, 2011 meeting, voted 8-1

to apportion the state legislature by using the 2010 Census count

-- without exclusion of nonresident military and dependents and

nonresident students -- as the permanent resident base.

 The Commission's June 28, 2011 decision came to the

attention of Hawai#i County legislator Robert Herkes, who

immediately sought an opinion from the Attorney General on

whether the Commission acted lawfully in deciding to include

nonresident military and dependents and nonresident students in

the permanent resident base.

 The Attorney General, by letter to Herkes of July 19,

2011, opined that "the Hawai#i Supreme Court would likely hold

that to the extent they are identifiable, nonresident college

students and nonresident military members and their families

cannot properly be included in the reapportionment population

base the Commission uses to draw the legislative district lines

this year." (Original underscoring). The opinion was based on

the legislative history of the 1992 "permanent resident"

amendment to article IV, section 4, and the Hawai#i Supreme

 9
 *** FOR PUBLICATION IN W EST'S HAW AI#I REPORTS AND PACIFIC REPORTER ***

Court's interpretation of "resident population," as used the

Hawai#i County Charter, as excluding nonresident college students

and nonresident military personnel and their dependents from the

population base for purposes of apportioning county council

districts.5 The opinion was forwarded to the Commission.

 The Commission, at its August 17, 2011 meeting, was

provided by Commission staff with the following summary of data

requested and received from DMDC and USPACOM on Hawaii's non-

permanent military resident population and from Hawai#i

universities on non-permanent student resident population.

 STAFF SUMMARY OF DATA SUBMITTED FROM THE MILITARY
 AND UNIVERSITIES FOR USE IN THE NON-PERMANENT
 POPULATION ADJUSTMENT TO THE 2010 CENSUS DATA

 The 2011 reapportionment project staff
 asked for non-permanent population data from the
 historical data sources to accomplish its
 constitutionally required population adjustment
 in determining the permanent resident population.

 The staff requested the military through USPACOM
 to provide a data set of Active Duty personnel
 and dependents who declare a state other than
 Hawaii as their home state. The data was
 provided segregated by U.S. Postal Zip Codes.

 USPACOM provided the following counts:

 Active Duty:
 Declares state other than Hawaii as home state 47,082
 Declares Hawaii as their home state 933
 Active Duty dependents in Hawaii 58,949

 We are in the process of evaluating the data to
 determine where these people live. We are then
 trying to place them in Group Quarters on base,
 base housing on base, or off-base housing through

 5
 Citizens for Equit. & Resp. Gov't v. County, 108 Hawai#i 318,
120 P.3d 217 (2005).

 10
 *** FOR PUBLICATION IN W EST'S HAW AI#I REPORTS AND PACIFIC REPORTER ***

 the reported U.S. Zip Code. We are trying to
 accomplish this in a reasonable and appropriate
 process.

 The staff requested the universities throughout
 the state to provide data of students who pay out
 of state tuition.

 The universities provided the following counts:

 Hawaii Pacific University international and
 mainland students by address. Some of these
 addresses are associated with military bases or
 commands. 3,203

 Brigham Young University Hawaii international
 and non-international students by address 627

 University of Hawaii System students by U.S.
 Zip Codes 10,493

 Chaminade University did not report.
 From their website total enrollment 2,781
 59% Hawaii resident 41% other than Hawaii

Commission staff provided the following explanation as to

"permanent and non-permanent military residents."

 The non-permanent resident extraction model used
 in 1991 and 2001 [reapportionments] relied on
 receiving location specific (address or Zip Code)
 residence information for the specific non-
 permanent residents to be extracted.

 In 2011, the data received from DMDC does not
 provide residence information for military
 sponsors nor does it provide specific breakdowns
 of permanent and non-permanent residents by
 location.

 This lack of specific data from DMDC does not
 allow the model used previously to be used at
 this time.

Commission staff further noted that the DMDC data reported the

location of active duty military by the zip codes of their duty

stations, not their residences, and that the data did not

designate the military dependents as residents or nonresidents.

 11
 *** FOR PUBLICATION IN W EST'S HAW AI#I REPORTS AND PACIFIC REPORTER ***

For these reasons, the Commission decided that the DMDC data did

not provide an accurate basis for determining Hawaii's non-

permanent military resident population and it decided to use data

from the 2010 Census for this purpose.

 Commission staff thereafter developed its own "model"

for the "extraction of non-permanent residents" for the 2011

reapportionment. Commission staff operated on the premise that

non-permanent residents -- active duty military who declare

Hawai#i not to be their home state and their dependents, and out-

of-state university students -- were to be identified according

to the specific location of their residences within each of the

four counties. Because the 2010 Census data and the university

data did not include the residence addresses for all of the non-

permanent active duty military residents and their dependents and

the out-of-state university students, Commission staff identified

three groups of non-permanent residents: Extraction A, Extraction

B, and Extraction C. The groups were based on the level of

"certainty in determining [the residents'] non-permanency and

location." Extraction A were residents whose specific locations

were certain and included out-of-state university students with

known addresses and active duty military, with "fairly certain

non-permanent status," living in military barracks. Extraction B

included all residents in Extraction A, plus active duty military

and their dependents, with "less certain non-permanent status,"

living in on-base military housing. Extraction C included all

 12
 *** FOR PUBLICATION IN W EST'S HAW AI#I REPORTS AND PACIFIC REPORTER ***

residents in Extraction A and Extraction B, plus out-of-state

university students with addresses identified only by zip code.

 From the 2010 Census data and the university data,

Commission Staff "extracted" the following numbers of active duty

military and their dependents and out-of-state university

students for purposes of computing the permanent residence base

for the 2011 apportionment.

 Extraction A Extraction B Extraction C
 Oahu 15,660 Oahu 72,609 Oahu 78,524
 Hawaii 793 Hawaii 796 Hawaii 921
 Maui 4 Maui 4 Maui 178
 Kauai 1 Kauai 143 Kauai 198
 16,458 73,552 79,821

The above numbers were presented to the Commission in an

"Extraction of Non-Permanent Residents" wherein Commission staff

noted that "under Extractions B or C, Oahu receives 17 and Hawaii

receives 4 senate seats."

 The Commission was scheduled to meet at its final

meeting on September 19, 2011 to adopt a final reapportionment

plan. It held a public hearing6 in Hilo on September 13, 2011

wherein attorney Stanley Roehrig testified on behalf of Hawai#i

County Senator Malama Solomon and three members of the Hawai#i

County Democratic Committee7 on the "extraction" of nonresidents

for the apportionment of senate seats. Roehrig cited to the

 6
 HRS § 25-2(a) ("[T]he commission shall conduct public hearings
[on legislative reapportionment]. . . . At least one public hearing
on the proposed reapportionment plan shall be held in each basic
island unit after initial public notice of the plan.").
 7
 Louis Hao, Patricia A. Cook and Steven G. Pavao

 13
 *** FOR PUBLICATION IN W EST'S HAW AI#I REPORTS AND PACIFIC REPORTER ***

Commission's August 17, 2011 "Staff Summary" showing a state

population of 47,082 non-permanent active duty military

residents, 58,949 military dependents, and 15,463 out-of-state

university students. He testified that this total population of

121,494 must be "extracted" from the total resident population of

1,330,301 to compute the permanent resident base for the 2011

apportionment of senate seats and that such computation resulted

in an increase of Hawai#i County's senate seats from 3 to 4.

 Senator Solomon, at the September 13, 2011 public

hearing, read into the record the following September 12, 2011

letter to the Commission from Governor Abercrombie.

 I want to register my strong support for drawing
 the [legislative district] lines on the basis of
 residency.

 The alternative of including non-residents in the
 count severely distorts the actual population
 shifts which have taken place across Hawaii over
 the last 10 years.

 In particular, the population growth on the Big
 Island will literally be ignored and in effect
 non-residents substituted for them in the guise
 of phantom voters. The likelihood of non-
 residents registering in any numbers remotely
 reflecting the population changes I've cited is
 highly unlikely.

 Arguments have been made that formulating
 districts absent a non-resident count would be
 challenging. Such an observation is entirely
 beside the point. One does not fail to implement
 one's duty under the law because doing so
 presents difficulties, logistical or otherwise.

 On the contrary, our obligation is to adhere to
 policies that reflect the legislative intent of
 the law regardless of whatever obstacles may
 appear.

 14
 *** FOR PUBLICATION IN W EST'S HAW AI#I REPORTS AND PACIFIC REPORTER ***

 In this instance my understanding is that
 sufficient information exists to reasonably
 account for the whereabouts of non-residents
 enough so that any contention that adequate
 knowledge is not available is essentially moot.

 I believe the Attorney General has already
 presented a preliminary view that counting non-
 residents is not warranted in law and it
 certainly is not the present practice. I believe
 that to undermine or deny Neighbor Island
 population growth for redistricting purposes is
 discriminatory on its face.

 Eight of the nine members of the Commission met as

scheduled on September 19, 2011 to vote on a final

reapportionment plan. Commission staff briefed the Commission on

the "extraction of non-permanent residents" presented in

Extractions A, B and C.

 After briefing and discussion, it was moved by

Chairperson Marks and seconded by Commissioner Thomason that the

Commission compute the permanent resident base for the 2011

legislative apportionment by excluding, from the 2010 census

population, the 16,458 residents identified in Extraction A.

 Commissioners Nonaka and Moore voted "no" as to any

exclusion of nonresidents as discriminatory. Commissioners

Thomason, Chipchase, Stone, and Hashimoto voted "yes" to

Extraction A as providing a "precise," "certain," and

"identifiable" base of non-permanent residents. Commissioner

Takitani voted "no" to Extraction A because the Commission's data

on active duty military, military dependents, and out-of-state

university students showed a non-permanent resident population of

 15
 *** FOR PUBLICATION IN W EST'S HAW AI#I REPORTS AND PACIFIC REPORTER ***

"at least" 61,411 and "potentially" 120,360. Chairperson Marks

stated a "preference" for Extraction B of 73,552 non-permanent

residents because, according to the Commission's data, 47,082

active duty military declare Hawai#i as not their home and, "on a

numbers basis," "73,552 [Extraction B] is closer to 47,082 than

16,4[58] [Extraction A] is to 47,082." The vote for Extraction A

standing at 4 "yes" votes and 3 "no" votes, Marks -- stating that

"some extraction has to occur" and "we need a majority to have

some extraction take place" -- "reluctantly" voted "yes" for

Extraction A, even though it "didn't represent everything [she]

would like."

 The Commission adopted a final reapportionment plan

that computed the permanent resident base by excluding 16,458

active duty military and out-of-state university students from

the 2010 census population of 1,330,301 and apportioned each

house of the legislature by allocating and maintaining, as to the

senate, 18 seats for Oahu County, 3 seats for Hawai#i County, 3

seats for Maui County, and 1 seat for Kauai County. The

Commission filed its 2011 Final Reapportionment Plan with Chief

Election Officer Scott Nago on September 26, 2011. Nago gave

public notice of the final reapportionment plan sometime

thereafter.

 C.

 On October 10, 2011, a petition challenging the 2011

Final Reapportionment Plan was filed with this court by Hawai#i

 16
 *** FOR PUBLICATION IN W EST'S HAW AI#I REPORTS AND PACIFIC REPORTER ***

County Senator Solomon and Hawai#i County Democratic Committee

members Hao, Cook and Pavao (collectively "Solomon"). They

asserted that: (1) the concept of "permanent residents" in

article IV, section 4 was "designed to extract all, not some of

the nonresident military, [nonresident military] dependents and

nonresident students from the entire population base" for

apportionment of the state legislature; (2) the Commission was

provided by its own expert staff with "a reasonably accurate

statewide count" of approximately 121,494 nonresident military,

nonresident military dependents, and nonresident students, but

the Commission extracted from this count "only a modest portion"

of some 16,000 nonresident military and nonresident students and

"willfully refused" to follow its own Standards and Criteria

requiring extraction of nonresident students and nonresident

military from the permanent resident population base; (3) the

Commission was not required to have extraction information that

was "neighborhood specific" "to perform the article IV, section 4

statewide extraction of non-permanent residents" and it

improperly extracted nonresidents "island by island from specific

locations" rather than "off the top of the statewide census

base;" and (4) the Commission "knew that extraction in excess of

20,000 would trigger the loss of an Oahu-based senator from [a

nonresident military and nonresident student] neighborhood," "the

fear of Oahu's loss of this senate seat was the driving force for

the Commission's 5-3 vote that effectively denied Hawai#i County

 17
 *** FOR PUBLICATION IN W EST'S HAW AI#I REPORTS AND PACIFIC REPORTER ***

a 4th senate seat," and "there can be no other rational

explanation for the Commission's action."

 A second petition challenging the 2011 Final

Reapportionment Plan was filed with this court on October 11,

2011 by Hawai#i County resident Michael Matsukawa. Matsukawa had

testified at the Commission's September 14, 2011 public hearing

in Kona and had urged the Commission to abide by article IV,

section 4's requirement of apportioning the state legislature on

a permanent resident base that excluded nonresident military. He

asserted in his petition that: (1) the Commission -- by employing

Extraction A -- "removed only some of the identifiable and

locatable non-permanent residents from the population base, but

not a sufficient number so as to affect the current apportionment

of legislative seats among the state's four basic island units, a

result that could have been achieved if the Commission employed

Extraction B or Extraction C or had developed any other

methodology within a reasonable time;" (2) the Commission failed

to make an honest and good faith effort to execute its duty to

apportion the state legislature in accordance with article IV,

section 4 by using its statutory power to gather information

necessary to identify and locate non-permanent residents, but

instead "bemoaned the difficulty of its work" and acted out of

"convenience" to adopt a final reapportionment plan by the

September 26, 2011 statutory deadline; and (3) the 2011 Final

Reapportionment Plan dilutes the representational interest of

 18
 *** FOR PUBLICATION IN W EST'S HAW AI#I REPORTS AND PACIFIC REPORTER ***

Hawai#i County in the state legislature by denying Hawai#i County

an additional seat in the senate.

 Solomon's and Matsukawa's petitions both sought: (1) a

judgment invalidating the 2011 Final Reapportionment Plan for the

state legislature; (2) a writ of mandamus directing the

Commission to prepare and file a new reapportionment plan for the

state legislature, and (3) a writ of mandamus directing Chief

Election Officer Nago to rescind the publication of the 2011

Final Reapportionment Plan.

 The Commission and the Chief Election Officer, as

respondents to Solomon's and Matsukawa's petitions, were directed

to answer the petitions and they answered on November 18, 2011.

They argued that the Commission "properly followed the mandate of

article IV, section 4" because the Commission determined the

total resident population of each county by "identify[ing] and

locat[ing] (by census block) the non-permanent residents to be

excluded or extracted (active duty military members living in

group quarters on base and non-resident students attending a

university in Hawaii)."

 Governor Abercrombie, as respondent to Solomon's

petition, was also directed to answer the petition and he

answered on November 21, 2011. He argued that the Commission,

"by its own admission," "did not extract all of the non-resident

university students and active military personnel and their

dependents who declared themselves to be residents of other

 19
 *** FOR PUBLICATION IN W EST'S HAW AI#I REPORTS AND PACIFIC REPORTER ***

states, from the population base it used to develop the Final

2011 Reapportionment Plan." He "agree[d] with [Solomon] that the

[Commission] did not use the correct population base to allocate

the seats of the State Senate (and the State House) under article

IV, section 4 and that the Commission must be compelled to

correct this error and prepare a revised Final Reapportionment

Plan."

 On January 4, 2012, we heard oral argument on Solomon's

and Matsukawa's petitions. That day, we issued orders granting

the petitions. We concluded that the 2011 Final Reapportionment

Plan is constitutionally invalid because it includes non-

permanent residents in the population base that the Commission

used to allocate the members of the state legislature among the

basic island units. We invalidated the 2011 Final

Reapportionment Plan and directed the Commission to prepare and

file a new reapportionment plan that: (1) allocates the members

of the state legislature among the basic island units by using a

permanent resident population base, and then (2) apportions the

members among the districts therein as provided by article IV,

section 6. We further directed the Chief Election Officer to

rescind the publication of the 2011 Final Reapportionment Plan

for the state legislature.

 II. JURISDICTION

 "Original jurisdiction is vested in the supreme court

of the State to be exercised on the petition of any registered

 20
 *** FOR PUBLICATION IN W EST'S HAW AI#I REPORTS AND PACIFIC REPORTER ***

voter whereby it may compel by mandamus or otherwise, the

appropriate person or persons to perform their duty or to correct

any error made in a reapportionment plan, or it may take such

other action to effectuate the purposes of this section as it may

deem appropriate. Any such petition shall be filed within forty-

five days of the date specified for any duty or within forty-five

days after the filing of a reapportionment plan." Hawai#i

Constitution, article IV, section 10.

 Petitioners Solomon, Hao, Cook and Pavao filed their

petition on October 10, 2011, fourteen days after the September

26, 2011 filing of the 2011 Final Reapportionment Plan. They

state that they are registered voters in Hawai#i County.

Petitioner Matsukawa filed his petition on October 11, 2011,

fifteen days after the September 26, 2011 filing of the 2011

Final Reapportionment Plan. He states that he is a Hawai#i

County registered voter.

 Solomon's and Matsukawa's petitions are petitions by

registered voters, filed within forty-five days after the filing

of the 2011 Final Reapportionment Plan, that seek writs of

mandamus from this court compelling the Commission to correct an

error made in the 2011 Final Reapportionment Plan. We have

jurisdiction to consider the petitions under article IV, section

10.

 21
 *** FOR PUBLICATION IN W EST'S HAW AI#I REPORTS AND PACIFIC REPORTER ***

 III. DISCUSSION

 The Inclusion Of Non-Permanent Residents In The
 Population Base For The 2011 Reapportionment Of The
 State Legislature Is An Error In The 2011 Final
 Reapportionment Plan That Renders The Plan
 Constitutionally Invalid.

 "We have long recognized that the Hawai#i Constitution

must be construed with due regard to the intent of the framers

and the people adopting it, and the fundamental principle in

interpreting a constitutional principle is to give effect to that

intent." Save Sunset Beach Coalition v. Honolulu, 102 Hawai#i

465, 474, 78 P.3d 1, 10 (2003), quoting Convention Center Auth.

v. Anzai, 78 Hawai#i 157, 167, 890 P.2d 1197, 1207 (1995).

 Article IV, sections 4 and 6 provide for apportionment

of the state legislature by using a "permanent resident" base.

This "mandate[s] that only residents having their domiciliary in

the State of Hawai#i may be counted in the population base for

the purpose of reapportioning legislative districts." Citizens

for Equit. & Resp. Gov't v. County, 108 Hawai#i at 322, 120 P.3d

at 221.

 Article IV, sections 4 and 6 provide a two-step process

for apportionment of the state legislature: apportionment among

the four counties, followed by apportionment within the four

counties. Article IV, section 4 first requires the Commission to

"allocate the total number of members of each house of the state

legislature being apportioned among the four basic island units,

. . . using the total number of permanent residents in each of

 22
 *** FOR PUBLICATION IN W EST'S HAW AI#I REPORTS AND PACIFIC REPORTER ***

the basic units and computed by the method known as the method of

equal proportions[.]" Upon such allocation, article IV, section

6 then requires the Commission to "apportion the members among

the districts therein" and "redraw district lines where necessary

in such manner that for each house the average number of

permanent residents per member of each district is as nearly

equal to the average for the basic island unit as practicable."

 As explained at the constitutional convention

proceeding on apportionment of the state legislature,

"[a]pportionment [under article III, section 4, now article IV,

section 4] is the process of allocating numbers of

representatives or senators to various districts within the

State. Districting [under article III, section 4, now article

IV, section 6] is the process of making those districts. These

are quite different activities." Debates in Committee of the

Whole on THE LEGISLATURE -- Apportionment and Districting, II

Proceedings of the Constitutional Convention of Hawaii of 1968,

at 204 (1972).

 Apportionment of the state legislature in 2011 required

the Commission, in step one, to allocate the 25 members of the

senate and 51 members of the house of representatives among the

four counties. The Commission was then required, in step two, to

apportion the senate and house members within county districts.

 Allocation under step one required the Commission to:

(1) determine the total number of permanent residents in the

 23
 *** FOR PUBLICATION IN W EST'S HAW AI#I REPORTS AND PACIFIC REPORTER ***

state; (2) divide the total number of permanent residents by 25

and 51 to determine the average number of permanent residents per

member of each senate and house district; and (3) divide the

total number of permanent residents in each county by the average

number of permanent residents per member of each senate and house

district. Such allocation required the Commission, as an initial

step, to determine the total number of permanent residents in the

state and in each county.

 Determining the total number of permanent residents in

the state and in each county required the Commission, in step

one, to extract non-permanent military residents and non-

permanent university student residents from the state's and the

counties' 2010 Census population. Apportioning the senate and

house members among nearly equal numbers of permanent residents

required the Commission, in step two, to identify the specific

locations of non-permanent military residents and non-permanent

university student residents.

 The Commission acknowledged a 2010 statewide population

of at least 62,545 out-of-state university students and active

duty military who declare Hawai#i not to be their home state.

The Commission further acknowledged a 2010 statewide population

of 58,949 military dependents, the majority of whom are

presumably the dependents of 47,082 active duty military -- out

of 48,015 active duty military -- who declare Hawai#i not to be

their home state. From these numbers, the Commission extracted,

 24
 *** FOR PUBLICATION IN W EST'S HAW AI#I REPORTS AND PACIFIC REPORTER ***

as non-permanent residents, only 16,458 student and military

residents with identifiable residence addresses. Identification

of the residence addresses for the non-permanent residents was

necessary for apportionment of the senate and house members

within the county districts under step two, but was not necessary

for allocation of the senate and house members among the four

counties under step one.

 The Commission's data identified, by zip codes, the

47,082 active duty military who declare Hawai#i not to be their

home state and the 58,949 military dependents. The data

identified 3,203 out-of-state students at Hawaii Pacific

University, 627 out-of-state students at Brigham Young

University, 1,140 out-of-state students at Chaminade University,

and 10,493 out-of-state students at the University of Hawaii (UH)

Manoa and Hilo. The UH out-of-state student population of 10,493

consists of 1,233 out-of-state students at UH-Hilo, according to

public information provided by Solomon to the Commission.

 The Commission had sufficient data to determine the

non-permanent military resident populations of each of the

counties. The Commission also had data to determine -- by the

site of Hawaii's universities -- the non-permanent student

resident populations of each of the counties. As to Hawai#i

County, Solomon used the Commission's data and identified for the

Commission -- by the zip codes of the active duty military and

their dependents -- 28 active duty military and 201 military

 25
 *** FOR PUBLICATION IN W EST'S HAW AI#I REPORTS AND PACIFIC REPORTER ***

dependents in Hawai#i County. Solomon also identified for the

Commission the 1,233 out-of-state students in Hawai#i County at

UH-Hilo. The Commission rejected Solomon's method of identifying

the non-permanent resident population of Hawai#i County and

identified and excluded only 793 residents from Hawai#i County's

permanent population.

 The Commission contends that it apportioned the state

legislature in accordance with article IV, section 4 because it

excluded, from the counties' permanent resident populations, only

non-permanent residents identifiable to particular census blocks.

However, HRS § 25-2(a) requires the Commission to apportion the

state legislature on the "basis, method and criteria" prescribed

by article IV, which provides, in section 4, for apportionment

"using the total number of permanent residents in each of the

basic island units." Nothing in article IV, section 4 requires

apportionment based on the total number of permanent residents

identified by census block. The 1991 Reapportionment Commission

used census blocks to identify, count and locate non-permanent

residents, but such method of determining the permanent resident

population base was not incorporated in article IV, section 4.

 The Commission's method of apportioning the state

legislature did not properly separate the step one process of

allocating the legislative members among the four counties from

the step two process of apportioning the members within county

districts. Identifying the non-permanent resident population for

 26
 *** FOR PUBLICATION IN W EST'S HAW AI#I REPORTS AND PACIFIC REPORTER ***

step one and identifying the non-permanent resident population

for step two were separate processes. The Commission

acknowledged at oral argument that it did not differentiate the

step one process from the step two process.

 The Commission's military data, university data and

census data on the state's non-permanent residents identified,

for step one, the resident counties for over 100,000 non-

permanent residents, but identified, for step two, the residence

addresses for only 16,458 non-permanent residents. The

Commission undertook its reapportionment task by focusing solely

on identification of non-permanent residents for step two and

using the results for step two to identify the non-permanent

resident population for step one. The result is a Final

Reapportionment Plan that includes -- in the population base that

the Commission used to allocate the 25 members of the senate and

51 members of the house of representatives among the basic island

units -- at least 45,996 non-permanent university student

residents and non-permanent active duty military residents, as

well as thousands of other non-permanent residents who are the

dependents of the 47,082 non-permanent active duty military

residents. The Final Reapportionment Plan disregards the express

mandate of article IV, section 4 that only permanent residents be

counted in the population base for the purpose of reapportionment

of the state legislature. The inclusion of non-permanent

residents in the population base for the 2011 reapportionment of

 27
 *** FOR PUBLICATION IN W EST'S HAW AI#I REPORTS AND PACIFIC REPORTER ***

the state legislature is an error in the Final Reapportionment

Plan. The error renders the Final Reapportionment Plan

constitutionally invalid under article IV, section 4.

 We invoke our power under article IV, section 10 to

correct the error in the Final Reapportionment Plan. The

Commission must prepare and file a new plan for the 2011

reapportionment of the state legislature. In preparing a new

plan, the Commission must first -- pursuant to article IV,

section 4 -- determine the total number of permanent residents in

the state and in each county and use those numbers to allocate

the 25 members of the senate and 51 members of the house of

representatives among the four counties. Upon such allocation,

the Commission must then -- pursuant to article IV, section 6 --

apportion the senate and house members among nearly equal numbers

of permanent residents within each of the four counties.8

Stanley H. Roehrig, /s/ Mark E. Recktenwald
Robert D.S. Kim, and
Peter Van Name Esser, /s/ Paula A. Nakayama
for petitioners Malama
Solomon, Louis Hao, /s/ Simeon R. Acoba, Jr.
Patricia A. Cook and
Steven G. Pavao /s/ James E. Duffy, Jr.

 /s/ Sabrina S. McKenna

 8
 Apportionment under article IV, section 6 requires the
Commission to "make an honest and good faith effort to construct
districts as nearly of equal population as is practicable. . . .
[M]athematical exactness or precision [is not a] constitutional
requirement." Citizens for Equit. & Resp. Gov't v. County, 108 Hawai#i
at 325, 120 P.3d at 224 (citations omitted).

 28
 *** FOR PUBLICATION IN W EST'S HAW AI#I REPORTS AND PACIFIC REPORTER ***

Michael J. Matsukawa,
petitioner pro se

Russell A. Suzuki, Diane
Erickson, and Robyn B.
Chun, Deputy Attorneys
General, for respondents
Chief Election Officer
Scott Nago, State of
Hawai#i 2011 Reapportionment
Commission, Victoria Marks,
Lorrie Lee Stone, Anthony
Takitani, Calvert Chipchase IV,
Elizabeth Moore, Clarice Y.
Hashimoto, Harold S. Masumoto,
Dylan Nonaka, and Terry E.
Thomason.

Charlene M. Aina and
Harvey E. Henderson,
Deputy Attorneys General,
for respondent Governor Neil
Abercrombie

 29